IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
_____

DWAYNE LESLIE

                    PLAINTIFF,

          -versus-

THE CITY OF NEW YORK, a municipal entity,
NEW YORK CITY DETECTIVE LOWEZ
WALKER, NEW YORK CITY LIEUTENANT
JOHN NATOLI, NEW YORK CITY
DETECTIVE SCOTT MARTIN, NEW YORK CITY
DETECTIVE GINA GRIFFIN, NEW YORK
CITY DETECTIVE KEVIN PECORELLA,
NEW YORK CITY POLICE OFFICER ERIK
NELSON, NEW YORK CITY UNDERCOVER
DETECTIVE "CO #122," NEW YORK CITY
UNDERCOVER DETECTIVE "CO #205,"
NEW YORK CITY POLICE OFFICERS
"JOHN DOES" 1-4,

                    DEFENDANTS.

_____

INDEX NO.
12 CV 849 (KBF)

SECOND
AMENDED
COMPLAINT
[JURY TRIAL
 DEMANDED]

Plaintiff DWAYNE LESLIE, by his attorneys, STECKLOW COHEN &
THOMPSON, complaining of the Defendant CITY OF NEW YORK and
Defendants NEW YORK CITY DETECTIVE LOWEZ WALKER, NEW YORK
CITY LIEUTENANT JOHN NATOLI, NEW YORK CITY DETECTIVE SCOTT
MARTIN, NEW YORK CITY DETECTIVE GINA GRIFFIN, NEW YORK CITY
DETECTIVE KEVIN PECORELLA, NEW YORK CITY POLICE OFFICER ERIK
NELSON, NEW YORK CITY UNDERCOVER DETECTIVE "CO #122," NEW
YORK CITYUNDERCOVER DETECTIVE "CO #205," and NEW YORK CITY
POLICE OFFICERS "JOHN DOES" 1-4 (individual defendants hereinafter
collectively referred to as "Defendant POLICE OFFICERS," individually referred
to as "Defendant POLICE OFFICER"), respectfully allege as follows:

### I. PRELIMINARY STATEMENT

   1.    Plaintiff DWAYNE LESLIE bring this action for compensatory damages,
punitive damages and attorney's fees pursuant to 42 U.S.C. § 1983 and 42

U.S.C. § 1988 for violations of his civil rights, as said rights are secured by said statutes and the Constitutions of the State of New York and the United States.

2.    On Wednesday, April 6, 2011 at or around 6:00 P.M., Plaintiff DWAYNE LESLIE took a walk to a local corner store for some candy. On his way out of the store, Plaintiff DWAYNE LESLIE saw a friend and approached him to say hello. Seconds later, Plaintiff DWAYNE LESLIE was being tackled to the ground and brutally beaten by four or more of the Defendant POLICE OFFICERS. The Defendant POLICE OFFICERS later falsely alleged that Plaintiff DWAYNE LESLIE sold two pills of ecstasy to one of the Defendant POLICE OFFICERS prior to his arrest, but no ecstasy was produced to support this allegation. Throughout much of the next three (3) days, Plaintiff DWAYNE LESLIE was handcuffed to a hospital bed as a result of his false arrest and the injuries sustained in his brutal beating at the hands of Defendant POLICE OFFICERS. Plaintiff DWAYNE LESLIE now brings this action in a quest for answers as to why he was punitively arrested without probable cause, brutally beaten, detained at length, and subjected to prosecution in the absence of criminal conduct.


## II. JURISDICTION

3.    This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth and Fourteenth Amendments to the United States Constitution. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1343(3) and (4) and the aforementioned statutory and constitutional provisions.

4.    Plaintiff DWAYNE LESLIE further invokes this Court's supplemental jurisdiction, pursuant to 28 USC. § 1367, over any and all State law claims and causes of action which derive from the same nucleus of operative facts and are part of the same case or controversy that gives rise to the federally based claims and causes of action.

## III. VENUE

5.    Venue is proper for the United States District Court for the Southern District of New York, pursuant to 28 U.S.C. § 1391(a), (b), and (c) and § 1402(b) because Defendant THE CITY OF NEW YORK maintains its primary and relevant place(s) of business in this district.

## IV. JURY DEMAND

6.    Plaintiff DWAYNE LESLIE respectfully demands a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

## V. THE PARTIES

7.    At all times pertinent to this complaint, Plaintiff DWAYNE LESLIE is and was a resident of the City of New York, State of New York, and the County of Queens.

8.     Defendant THE CITY OF NEW YORK was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

9.     Defendant THE CITY OF NEW YORK maintains the New York City Police Department, a duly authorized public authority and/or police department, authorized to perform all functions of a police department as per the applicable sections of the New York State Criminal Procedure Law, acting under the direction and supervision of the aforementioned municipal corporation, City of New York.

10.     That at all times hereinafter mentioned, Defendant NEW YORK CITY DETECTIVE LOWEZ WALKER, NEW YORK CITY LIEUTENANT JOHN NATOLI, NEW YORK CITY DETECTIVE SCOTT MARTIN, NEW YORK CITY DETECTIVE GINA GRIFFIN, NEW YORK CITY DETECTIVE KEVIN PECORELLA, NEW YORK CITY POLICE OFFICER ERIK NELSON, NEW YORK CITY UNDERCOVER DETECTIVE CO #122, NEW YORK CITY UNDERCOVER DETECTIVE CO #205, NEW YORK CITY POLICE OFFICER "JOHN DOE" (individual defendants hereinafter collectively referred to as "Defendant POLICE OFFICERS," individually referred to as "Defendant POLICE OFFICER"), were duly sworn police lieutenants, detectives, and officers of said department and were acting under the supervision of said department and according to their official duties.

11.     Defendants NEW YORK CITY DETECTIVE LOWEZ WALKER, NEW YORK CITY LIEUTENANT JOHN NATOLI, NEW YORK CITY DETECTIVE SCOTT MARTIN, NEW YORK CITY DETECTIVE GINA GRIFFIN, NEW YORK CITY DETECTIVE KEVIN PECORELLA, NEW YORK CITY POLICE OFFICER ERIK NELSON, NEW YORK CITY UNDERCOVER DETECTIVE CO #122, NEW YORK CITY UNDERCOVER DETECTIVE CO #205, were named by Defendant CITY OF NEW YORK as part of Defendants' August 14, 2012 Rule 26(a) Initial Disclosures, on information and belief, as having been involved in Plaintiff's arrest or as having information related to Plaintiff's arrest.

12.     The specific roles played by Defendants NEW YORK CITY DETECTIVE LOWEZ WALKER, NEW YORK CITY LIEUTENANT JOHN NATOLI, NEW YORK CITY DETECTIVE SCOTT MARTIN, NEW YORK CITY DETECTIVE GINA GRIFFIN, NEW YORK CITY DETECTIVE KEVIN PECORELLA, NEW YORK CITY POLICE OFFICER ERIK NELSON, NEW YORK CITY UNDERCOVER DETECTIVE CO #122, and NEW YORK CITY UNDERCOVER DETECTIVE CO #205 in Plaintiff DWAYNE LESLIE's arrest and detention, if any, are unclear to Plaintiff at this time.

13.     The identity of Defendant "JOHN DOE" POLICE OFFICERS at issue here are unknown to Plaintiff DWAYNE LESLIE at this time.

14.     That at all times hereinafter mentioned the Defendant POLICE OFFICERS were acting under color of state law and/or in compliance with the official rules,

regulations, laws, statutes, customs, usages and/or practices of the State or City of New York.

15.    Each and all of the acts of the Defendant POLICE OFFICERS alleged herein were done by said defendants while acting within the scope of their employment by Defendant THE CITY OF NEW YORK.

16.    Each and all of the acts of the Defendant POLICE OFFICERS alleged herein were done by said defendants while acting in furtherance of their employment by Defendant THE CITY OF NEW YORK.

## VI. FACTS COMMON TO ALL CLAIMS

17.    Plaintiff DWAYNE LESLIE is a thirty (30) year-old male.

18.    Plaintiff DWAYNE LESLIE is married.

19.    Plaintiff DWANYE LESLIE is a college graduate.

20.    Plaintiff DWAYNE LESLIE has a Bachelor's Degree in History.

21.    At the time of the April 6, 2011 Rosedale Queens, New York incident and brutal beating administered by the Defendant POLICE OFFICERS upon Plaintiff DWAYNE LESLIE, Plaintiff DWAYNE LESLIE was contemplating applying to graduate school at Columbia University.

22.    The events herein described began at or around 6:00pm on April 6, 2011.

23.    On the evening of April 6, 2011, Plaintiff DWAYNE LESLIE was present at the home of a childhood friend in Rosedale Queens, New York.

24.    Plaintiff DWAYNE LESLIE was present at the home of a childhood friend in Rosedale Queens, New York in order to visit with that childhood friend's husband.

25.    Plaintiff DWAYNE LESLIE'S visiting of a childhood friend's husband in Rosedale Queens, New York on April 6, 2011 at or around 6:00 P.M. took place after Plaintiff DWAYNE LESLIE had picked up that childhood friend's young child from school.

26.    During Plaintiff DWAYNE LESLIE's visit with a childhood friend's husband in Rosedale Queens, New York on April 6, 2011 at or around 6:00 P.M., Plaintiff DWAYNE LESLIE decided to walk to Jabbar Famous Deli (a local corner store) in order to purchase some candy.

27.    After Plaintiff DWAYNE LESLIE entered Jabbar Famous Deli he purchased some candy.

28.    Following his purchase of the aforementioned candy from Jabbar Famous Deli, Plaintiff DWAYNE LESLIE exited that same local corner store.

29.    After exiting the local corner store Plaintiff DWAYNE LESLIE saw a friend.

30.   After seeing a friend outside the local corner store, Plaintiff DWAYNE LESLIE approached him in order to say hello.

31.   At that time, several of the Defendant POLICE OFFICERS tackled Plaintiff DWAYNE LESLIE to the ground.

32.   At that time each of the Defendant POLICE OFFICERS was in plainclothes.

33.   Following being tackled to the ground by the Defendant POLICE OFFICERS, Plaintiff DWAYNE LESLIE was then kicked by the Defendant POLICE OFFICERS.

34.   Plaintiff DWAYNE LESLIE screamed at this time, in sum and substance, "THEY ARE GOING TO KILL ME!"

35.   In the course of brutally beating Plaintiff DWAYNE LESLIE, or directly thereafter, the Defendant POLICE OFFICERS arrested Plaintiff DWAYNE LESLIE.

36.   Plaintiff DWAYNE LESLIE received multiple injuries from the April 6, 2011 Rosedale Queens, New York incident and brutal beating administered by the Defendant POLICE OFFICERS upon Plaintiff DWAYNE LESLIE.

37.   Plaintiff DWAYNE LESLIE'S left ankle was broken as a result of the April 6, 211 Rosedale Queens, New York incident and brutal beating administered by the Defendant POLICE OFFICERS upon Plaintiff DWAYNE LESLIE.

38.   Plaintiff DWAYNE LESLIE'S left ankle was dislocated as a result of the April 6, 2011 Rosedale Queens, New York incident and brutal beating administered by the Defendant POLICE OFFICERS upon Plaintiff DWAYNE LESIE.

39.   The injuries sustained to Plaintiff DWAYNE LESLIE'S left ankle as a result of the April 6, 2011 Rosedale Queens, New York incident and brutal beating administered by the Defendant POLICE OFFICERS upon Plaintiff DWAYNE LESLIE required a surgical open reduction.

40.   The injuries sustained to Plaintiff DWAYNE LESLIE'S left ankle as a result of the April 6, 2011 Rosedale Queens, New York incident and brutal beating administered by the Defendant POLICE OFFICERS upon Plaintiff required fixation with metal rods.

41.   The injuries sustained to Plaintiff DWAYNE LESLIE'S left ankle as a result of the April 6, 2011 Rosedale Queens, New York incident and brutal beating administered by the Defendant POLICE OFFICERS upon Plaintiff DWAYNE LESLIE required fixation with metal pins.

42.   The aforementioned metal rods and pins will remain inside Plaintiff DWAYNE LESLIE's left ankle for the remainder of his life.

43.   Plaintiff DWAYNE LESLIE received a depressed left inferior orbital fracture as a result of the April 6, 2011 Rosedale Queens, New York incident and brutal beating administered by the Defendant POLICE OFFICERS upon Plaintiff DWAYNE LESLIE.

44.   Plaintiff DWAYNE LESLIE describes the aforementioned "left inferior orbital fracture" injury sustained as a result of the April 6, 2011 Rosedale Queens, New York incident and brutal beating administered by the Defendant POLICE OFFICERS upon Plaintiff as a "Broken face below the left eye, crushed inward."

45.   Plaintiff DWAYNE LESLIE'S aforementioned "left inferior orbital fracture" injury sustained as a result of the April 6, 2011 Rosedale Queens, New York incident and brutal beating administered by the Defendant POLICE OFFICERS upon Plaintiff DWAYNE LESLIE caused him double vision immediately after the incident and brutal beating.

46.   Plaintiff DWAYNE LESLIE'S aforementioned "left inferior orbital fracture" injury sustained as a result of the April 6, 2011 Rosedale Queens, New York incident and brutal beating administered by the Defendant POLICE OFFICERS upon Plaintiff DWAYNE LESLIE caused him blurry vision in his left eye.

47.   Plaintiff DWAYNE LESLIE'S aforementioned "left inferior orbital fracture" injury sustained as a result of the April 6, 2011 Rosedale Queens, New York incident and brutal beating administered by the Defendant POLICE OFFICERS upon Plaintiff DWAYNE LESLIE caused him blurry vision in his left eye for an extended period of time following the incident and brutal beating.

48.   Plaintiff DWAYNE LESLIE suffered other cuts and bruises as a result of the April 6, 2011 Rosedale Queens, New York incident and brutal beating administered by the Defendant POLICE OFFICERS upon Plaintiff DWAYNE LESLIE.

49.   Plaintiff DWAYNE LESLIE'S two (2) front teeth were loosened as a result of the April 6, 2011 Rosedale Queens, New York incident and brutal beating administered by the Defendant POLICE OFFICERS upon Plaintiff DWAYNE LESLIE.

50.   Plaintiff DWAYNE LESLIE suffered terror, humiliation and mental anguish as a result of the April 6, 2011 Rosedale Queens, New York incident and brutal beating administered by the Defendant POLICE OFFICERS upon Plaintiff DWAYNE LESLIE.

51.   Following this arrest by the Defendant POLICE OFFICERS, Plaintiff DWAYNE LESLIE was searched by one or more of the Defendant POLICE OFFICERS.

52.   Upon information and belief, the search of Plaintiff DWAYNE LESLIE by one or more of the Defendant POLICE OFFICERS found no narcotics, weapons, or contraband of any kind.

53.   Upon information and belief, following the search of Plaintiff DWAYNE LESLIE by one or more of the Defendant POLICE OFFICERS that found no narcotics, weapons, or contraband of any kind, one of the Defendant POLICE OFFICERS, a relatively short male, exclaimed, in sum and substance, "FUCK! FUCK!  FUCK!  WE MESSED UP!"

54.   Nevertheless, following his arrest by Defendant POLICE OFFICERS, Plaintiff DWAYNE LESLIE was charged with Criminal Sale of a Controlled Substance in the Fifth Degree ("CRIMINAL SALE OF A CONTROLLED SUBSTANCE 5"), a Class D felony offense.

55.   In accordance with the State of New York's Penal Code § 220.31, CRIMINAL SALE OF A CONTROLLED SUBSTANCE 5 is punishable by up to seven (7) years in prison.

56.   There was no basis in fact for charging Plaintiff DWAYNE LESLIE with CRIMINAL SALE OF A CONTROLLED SUBSTANCE 5.

57.   Following his arrest by the Defendant POLICE OFFICERS, Plaintiff DWAYNE LESLIE was charged with Resisting Arrest.

58.   In the State of New York Resisting Arrest is a misdemeanor offense.

59.   There was no basis in fact for charging Plaintiff DWAYNE LESLIE with Resisting Arrest.

60.   On information and belief, the allegations set forth in the initial criminal complaint were entirely false.

61.   In fact, no illegal substances whatsoever were recovered from Mr. Leslie at any point in the incident described herein.

62.   On information and belief, the pills of "ecstasy" were individual pieces of the candy purchased by Plaintiff DWAYNE LESLIE at the deli immediately prior to his arrest and brutal beating.

63.   Defendants' Rule 26(a) Initial Disclosures indicate that each of the named Defendant POLICE OFFICERS was working as part of the Queens Narcotics unit of the NYPD at or around the time of the Defendant POLICE OFFICERS' arrest and brutal beating of Plaintiff DWAYNE LESLIE.

64.   On information and belief, it is common practice among NYPD narcotics officers to proffer planted and/or false drug charges to support arrests.

65.   On information and belief, this practice is known as "flaking."

66.   On information and belief, "flaking" is often undertaken to meet quantitative performance goals for enforcement activities, i.e., "arrest quotas."

67.   Information supporting the existence of the above-referred practices of "flaking" and "arrest quotas" are pled in detail below, in denominated sections.

68.   The initial criminal complaint filed against Plaintiff DWAYNE LESLIE falsely alleges that Plaintiff DWAYNE LESLIE resisted his arrest.

69.   Plaintiff DWAYNE LESLIE did not resist arrest.

70.   Plaintiff DWAYNE LESLIE was tackled to the ground and beaten brutally by the Defendant POLICE OFFICERS before he could even know that he was under arrest.

71.   Upon information and belief, Plaintiff DWAYNE LESLIE was not aware that the persons who assaulted him were in fact police officers at the time that the Defendant POLICE OFFICERS tackled and brutally beat Plaintiff DWAYNE LESLIE.

72.   At least two (2) individuals witnessed the incident and brutal beating surrounding Plaintiff DWAYNE LESLIE'S April 6, 2011 Rosedale Queens, New York interaction with the Defendant POLICE OFFICERS.

73.   Upon information and belief, each of the two (2) or more witnesses from the scene of Plaintiff DWAYNE LESLIE'S April 6, 2011 Rosedale Queens, New York interaction with the Defendant POLICE OFFICERS indicated that the Defendant POLICE OFFICERS rationale for Plaintiff DWAYNE LESLIE'S arrest was uncertain at the time of the arrest.

74.   While in the custody of the New York City Police Department following his April 6, 2011 arrest and prior to his April 9, 2011 arraignment, Plaintiff DWAYNE LESLIE spent a period of that time at the hospital.

75.   During this period at the hospital, while Plaintiff DWAYNE LESLIE was still in the custody of the New York City Police Department, Plaintiff DWAYNE LESLIE was handcuffed to his hospital bed.

76.   During this period at the hospital, despite substantial pain, Plaintiff DWAYNE LESLIE was consistently agreeable, pleasant, cooperative and compliant in his interactions with the non-defendant police officers assigned to guard him.

77.   During a period of this time at the hospital, while Plaintiff DWAYNE LESLIE was still in the custody of the New York City Police Department and handcuffed to his hospital bed, Plaintiff DWAYNE LESLIE had just received surgery on his left ankle.

78.   During this period, as a result of the recent surgery on his left ankle, Plaintiff DWAYNE LESLIE could not walk without crutches.

79.   During this period, as a result of the recent surgery on his left ankle, Plaintiff DWAYNE LESLIE was not a flight risk.

80.   During this period, as a result of the recent surgery on his left ankle and/or Plaintiff DWAYNE LESLIE's entirely cooperative, pleasant and agreeable demeanor, the Defendant New York City Police Department's act of handcuffing

Plaintiff DWAYNE LESLIE to his hospital bed constituted an unnecessary use of force.

81.    During this period, as a result of the recent surgery on his left ankle and/or Plaintiff DWAYNE LESLIE's entirely cooperative, pleasant and agreeable demeanor, the Defendant New York City Police Department's act of handcuffing Plaintiff DWAYNE LESLIE to his hospital bed constituted an excessive use of force.

82.    After a time, Plaintiff DWAYNE LESLIE was discharged from the hospital to police custody holding pending arraignment.

83.    Plaintiff DWAYNE LESLIE was prescribed pain-killers and anti-inflammatory medicines as a result of his injuries sustained in the incident.

84.    Plaintiff DWAYNE LESLIE was prescribed pain-killers and anti-inflammatory medicines as a result of the pain and swelling he suffered from his injuries sustained in the incident.

85.    After a time, Plaintiff DWAYNE LESLIE was transported from the hospital back to the police precinct for holding pending arraignment.

86.    Upon information and belief, Plaintiff DWAYNE LESLIE was held overnight at the precinct on the night of April 8, 2011.

87.    Upon information and belief, Plaintiff DWAYNE LESLIE was not given his prescribed medications while in police custody.

88.    Upon information and belief, Plaintiff DWAYNE LESLIE was not allowed to use his crutches while in police custody.

89.    As a result, Plaintiff DWAYNE LESLIE suffered considerable pain while in police custody.

90.    Upon information and belief, Plaintiff DWAYNE LESLIE did not receive his medications for ten (10) or more hours prior to his arraignment.

91.    On April 9, 2011, Plaintiff DWAYNE LESLIE was forced to hop, without his crutches and without pain medication, approximately 210 feet from the police transport to the Queens Criminal Court holding area.

92.    Plaintiff DWAYNE LESLIE was present, in court, bandaged and in substantial pain, for his April 9, 2011 arraignment.

93.    Plaintiff DWAYNE LESLIE was released on his own recognizance at his April 9, 2011 arraignment.

94.    Following his April 9, 2011 arraignment, Plaintiff DWAYNE LESLIE next appeared in Queens Criminal Court on May 4, 2011.

95.    Before Plaintiff DWAYNE LESLIE'S May 4, 2011 appearance in Queens Criminal Court, Plaintiff DWAYNE LESLIE had been charged with CRIMINAL SALE OF A CONTROLLED SUBSTANCE 5.

96. As of May 4, 2011, a chemical substance test had been conducted on the "ecstasy" which Plaintiff DWAYNE LESLIE had allegedly sold to the aforementioned undercover narcotics officer.

97. As of May 4, 2011, the chemical substance test which had been conducted on the "ecstasy" which Plaintiff DWAYNE LESLIE had allegedly sold to the aforementioned undercover narcotics officer revealed that the alleged "ecstasy" contained no illegal substances.

98. On May 4, 2011, the CRIMINAL SALE OF A CONTROLLED SUBSTANCE 5 charge against Plaintiff DWAYNE LESLIE was dismissed on motion of the prosecution.

99. Upon information and belief, the "ecstasy" tested by police officers and allegedly forming the basis for Plaintiff DWAYNE LESLIE's arrest was in fact two pieces of the candy that Plaintiff DWAYNE LESLIE had purchased immediately prior to his arrest and brutal beating.

100. As of May 4, 2011, Plaintiff DWAYNE LESLIE'S Resisting Arrest Charge remained outstanding.

101. From May 4, 2011 through September 27, 2011 Plaintiff DWAYNE LESLIE appeared in Queens Criminal Court on four (4) separate occasions.

102. Over this time, the Queens District Attorney Integrity Bureau was investigating the propriety of the Resisting Arrest charge against Plaintiff DWAYNE LESLIE.

103. Plaintiff DWAYNE LESLIE appeared in Queens Criminal Court on May 4, 2011.

104. Plaintiff DWAYNE LESLIE appeared in Queens Criminal Court on May 31, 2011.

105. Plaintiff DWAYNE LESLIE appeared in Queens Criminal Court on July 27, 2011.

106. Plaintiff DWAYNE LESLIE appeared in Queens Criminal Court on September 27, 2011.

107. At Plaintiff DWAYNE LESLIE'S September 27, 2011 appearance in Queens Criminal Court, Plaintiff DWAYNE LESLIE received an Adjournment in Contemplation of Dismissal for the sole charge remaining outstanding against him, Resisting Arrest.

108. That charge has since been dismissed and sealed.

109. Upon information and belief, the charges preferred against Plaintiff DWAYNE LESLIE'S were "cover-charges" brought in order to justify the Defendant POLICE OFFICERS' illegal "Contempt of Cop" arrest.

110. Upon information and belief, the charges preferred against Plaintiff DWAYNE LESLIE'S were "cover-charges" brought in order to justify the Defendant POLICE OFFICERS' illegal "flaking" arrest.

111. Upon information and belief, the charges preferred against Plaintiff DWAYNE LESLIE'S were "cover-charges" brought in order to justify the Defendant POLICE OFFICERS' illegal use of excessive force against Plaintiff DWAYNE LESLIE.

112. At the time of the April 6, 2011 Rosedale Queens, New York incident and brutal beating administered by the Defendant POLICE OFFICERS upon Plaintiff DWAYNE LESLIE, Plaintiff DWAYNE LESLIE did not have any warrants outstanding for his arrest.

113. At the time of the April 6, 2011 Rosedale Queens, New York incident and brutal beating administered by the Defendant POLICE OFFICERS upon Plaintiff DWAYNE LESLIE, Plaintiff DWAYNE LESLIE was not carrying a weapon of any sort.

114. At the time of the April 6, 2011 Rosedale Queens, New York incident and brutal beating administered by the Defendant POLICE OFFICERS upon Plaintiff DWAYNE LESLIE, Plaintiff DWAYNE LESLIE was not carrying any illegal substances.

115. At the time of the April 6, 2011 Rosedale Queens, New York incident and brutal beating administered by the Defendant POLICE OFFICERS upon Plaintiff DWAYNE LESLIE, Plaintiff DWAYNE LESLIE was not engaged in any illegal activity of any kind.

116. The April 6, 2011 incident and its aftermath described herein constituted Plaintiff DWAYNE LESLIE's only interactions with the New York City Police Department to date.

117. The April 6, 2011 incident and its aftermath described herein constituted Plaintiff DWAYNE LESLIE's only interactions with the American system of jurisprudence to date.

118. As a result of the foregoing, Plaintiff DWAYNE LESLIE sustained, inter alia, mental injuries, emotional distress, embarrassment, loss of property, damage of property, humiliation, and deprivation of his constitutional rights.


### "CONTEMPT OF COP" AND "COVER CHARGE" ARRESTS

119. Upon information and belief, the "contempt of cop" and "cover charge" charges levied most regularly by New York City Police Officers are disorderly conduct, resisting arrest, and obstruction of governmental administration.

120. Upon information and belief, "contempt of cop" and "cover charge" charges such as disorderly conduct, resisting arrest, and obstruction of governmental administration are relatively easy for police to levy in the absence of actual probable cause because they may arise out of nearly any police-civilian interactions.

121. Upon information and belief, "contempt of cop" and "cover charge" charges such as disorderly conduct, resisting arrest, and obstruction of governmental administration are relatively easy for police to levy in the absence of actual probable cause because they can be levied solely upon the allegations of the arresting officer(s) without reference to physical evidence or witness observation of criminal acts.

122. Upon information and belief, to date, Defendant THE CITY OF NEW YORK has not implemented any particular, training, oversight measures or policies designed or intended to curtail the improper use by New York City Police Officers of so-called "contempt of cop" and "cover charge" charges such as disorderly conduct, resisting arrest, and obstruction of governmental administration.

123. Upon information and belief, and despite due and repeated notice that New York City Police Officers have an ongoing decades-old custom or practice of charging individuals with crimes and violations such as resisting arrest, disorderly conduct, and obstruction of governmental administration for personal vindication and/or as pretexts to justify use of force, to date, Defendant THE CITY OF NEW YORK has not implemented any particular training, oversight measures or policies designed or intended to curtail the improper use by New York City Police Officers of so-called "contempt of cop" and "cover charge" charges such as disorderly conduct, resisting arrest, and obstruction of governmental administration.

124. Upon information and belief, and despite due and repeated notice that New York City Police Officers have an ongoing custom or practice of charging individuals with crimes and violations such as resisting arrest, disorderly conduct, and obstruction of governmental administration as pretexts to justify punitive false arrests undertaken in the absence of probable cause, to date, Defendant THE CITY OF NEW YORK has not implemented any particular training, oversight measures or policies designed or intended to curtail the improper use by New York City Police Officers of so-called "contempt of cop" and "cover charge" charges such as disorderly conduct, resisting arrest, and obstruction of governmental administration.

125. Upon information and belief, and despite due and repeated notice that New York City Police Detectives, Lieutenants, and Officers such as the Defendant POLICE OFFICERS have charged and continue to charge individuals with crimes and violations such as resisting arrest, disorderly conduct, and

obstruction of governmental administration as pretexts to justify punitive false arrests undertaken in the absence of probable cause, to date Defendant THE CITY OF NEW YORK has not implemented any particular oversight measures or policies designed or intended to curtail the improper use by New York City Police Officers of so-called "contempt of cop" and "cover charge" charges such as disorderly conduct, resisting arrest, and obstruction of governmental administration.

126. The particular arrest of Plaintiff DWAYNE LESLIE is believed to have been motivated in whole or in part by the aforesaid custom or practice of charging individuals with crimes and violations such as resisting arrest, disorderly conduct, and obstruction of governmental administration for personal vindication and/or as pretexts to justify use of force, and/or to justify punitive false arrests because Plaintiff DWAYNE LESLIE'S arrest was undertaken in the absence of probable cause to arrest.

127. The particular arrest of Plaintiff DWAYNE LESLIE is believed to have been motivated in whole or in part by the aforesaid custom or practice of charging individuals with crimes and violations such as resisting arrest, disorderly conduct, and obstruction of governmental administration for personal vindication and/or as pretexts to justify use of force, and/or to justify punitive false arrests because they were undertaken in a manner which indicated that the individual Defendant POLICE OFFICERS who participated in Plaintiff DWAYNE LESLIE's arrest made the determination to arrest Plaintiff DWAYNE LESLIE before determining why Plaintiff DWAYNE LESLIE should be arrested.

128. The particular arrest of Plaintiff DWAYNE LESLIE is believed to have been motivated in whole or in part by the aforesaid custom or practice of charging individuals with crimes and violations such as resisting arrest, disorderly conduct, and obstruction of governmental administration for personal vindication and/or as pretexts to justify use of force, and/or to justify punitive false arrests, because the Defendant POLICE OFFICERS arrested and initiated criminal proceedings against Plaintiff DWAYNE LESLIE after it was already established that Plaintiff DWAYNE LESLIE was not carrying any weapons or illegal substances, and did not have any outstanding warrants against him, but after Plaintiff DWAYNE LESLIE had been seized and brutally beaten by the Defendant POLICE OFFICERS.

## "TESTILYING" and "FLAKING" ARRESTS

129. On information and belief, the arrest of Plaintiff DWAYNE LESLIE was predicated on a false allegation that Plaintiff DWAYNE LESLIE had made a drug sale to an undercover police officer.

130. On information and belief, Plaintiff DWAYNE LESLIE did not in fact possess any drugs or sell any drugs to any person.

131. On information and belief, one or more Defendant POLICE OFFICERS falsely alleged that Plaintiff DWAYNE LESLIE sold drugs to an undercover police officer in order to justify the arrest and brutal beating of Plaintiff DWAYNE LESLIE.

132. The practice of false drug arrests is colloquially referred to as "flaking."[1]

133. The particular arrest of Plaintiff DWAYNE LESLIE is believed to have been effected in whole or in part by the aforesaid practices of "testilying" and "flaking" because Plaintiff DWAYNE LESLIE'S arrest was undertaken in the absence of probable cause to arrest.

134. The particular arrest of Plaintiff DWAYNE LESLIE is believed to have been effected in whole or in part by the aforesaid practices of "testilying" and "flaking" because it was undertaken in a manner which indicated that the individual Defendant POLICE OFFICERS who participated in Plaintiff DWAYNE LESLIE's arrest made the determination to arrest Plaintiff DWAYNE LESLIE for CRIMINAL SALE OF A CONTROLLED SUBSTANCE 5 when Plaintiff DWAYNE LESLIE had not sold any drugs to any person.

135. The particular arrest of Plaintiff DWAYNE LESLIE is believed to have been effected in whole or in part by the aforesaid practices of "testilying" and "flaking" because it was undertaken in a manner which indicated that the individual Defendant POLICE OFFICERS who participated in Plaintiff DWAYNE LESLIE's arrest made the determination to arrest Plaintiff DWAYNE LESLIE for CRIMINAL SALE OF A CONTROLLED SUBSTANCE 5 when Plaintiff DWAYNE LESLIE had not been in possession of any drugs.

136. The particular arrest of Plaintiff DWAYNE LESLIE is believed to have been effected in whole or in part by the aforesaid practices of "testilying" and "flaking" because it was undertaken in a manner which indicated that the individual Defendant POLICE OFFICERS who participated in Plaintiff DWAYNE LESLIE's arrest falsely averred that Plaintiff DWAYNE LESLIE had sold drugs to an undercover officer in support of the prosecution of Plaintiff.

137. The particular arrest of Plaintiff DWAYNE LESLIE is believed to have been effected in whole or in part by the aforesaid practices of "testilying" and "flaking" because the Defendant POLICE OFFICERS arrested and initiated criminal proceedings against Plaintiff DWAYNE LESLIE after it was already established that Plaintiff DWAYNE LESLIE was not carrying any weapons or illegal substances, and did not have any outstanding warrants against him, but after Plaintiff DWAYNE LESLIE had been seized and brutally beaten by the Defendant POLICE OFFICERS.

---

[1] Parascandola, Kappstatter, Doyle and Schapiro, "Cop Morale Low After String of NYPD Scandals Puts Department Under Fire," New York Daily News, October 23, 2011, incorporated by reference herein and available online at http://articles.nydailynews.com/2011-10-23/local/30329895_1_bronx-cop-internal-affairs-bureau-captains-endowment-association

## ARREST QUOTAS

138. Upon information and belief, the arrest of Plaintiff DWAYNE LESLIE was motivated wholly by the Defendant POLICE OFFICERS' need to meet quantitative enforcement "productivity goals" promulgated by Defendant CITY OF NEW YORK.

139. Upon information and belief, the arrest of Plaintiff DWAYNE LESLIE was motivated in part by the Defendant POLICE OFFICERS' need to meet quantitative enforcement "productivity goals" promulgated by Defendant THE CITY OF NEW YORK.

140. Upon information and belief, the arrest of Plaintiff DWAYNE LESLIE was motivated wholly by the Defendant POLICE OFFICERS' need to meet quantitative enforcement "productivity goals" promulgated by policymakers and/or supervisory staff of Defendant THE CITY OF NEW YORK's police department.

141. Upon information and belief, the arrest of Plaintiff DWAYNE LESLIE was motivated in part by the Defendant POLICE OFFICERS' O need to meet quantitative enforcement "productivity goals" promulgated by policymakers and/or supervisory staff of Defendant CITY OF NEW YORK's police department.

142. The particular arrest of Plaintiff DWAYNE LESLIE is believed to have been motivated in whole or in part by the aforesaid unconstitutional arrest quota custom and/or policy because they were undertaken in the absence of probable cause to arrest.

143. The particular arrest of Plaintiff DWAYNE LESLIE is believed to have been motivated in whole or in part by the aforesaid unconstitutional arrest quota custom and/or policy because it was undertaken in a manner which indicated that the individual Defendant POLICE OFFICERS who participated in Plaintiff DWAYNE LESLIE's arrest made the determination to arrest Plaintiff DWAYNE LESLIE before determining why Plaintiff DWAYNE LESLIE should be arrested.

144. The particular arrest of Plaintiff DWAYNE LESLIE is believed to have been motivated in whole or in part by the aforesaid unconstitutional arrest quota custom and/or policy because it was undertaken in a manner which indicated that the individual Defendant POLICE OFFICERS who participated in Plaintiff DWAYNE LESLIE's arrest falsely averred to Plaintiff DWAYNE LESLIE's involvement in a drug sale when no actual drugs were recovered from Plaintiff DWAYNE LESLIE or any police officer alleged to have interacted with Plaintiff DWAYNE LESLIE.

145. The particular arrest of Plaintiff DWAYNE LESLIE is believed to have been motivated in whole or in part by the aforesaid unconstitutional arrest quota custom and/or policy because Plaintiff DWAYNE LESLIE was arrested after it was already established that he was not carrying any weapons or illegal

substances, did not have any outstanding warrants against him, and was not engaged in illegal conduct of any kind just before the time of his arrest.

## FIRST CLAIM FOR RELIEF
## DEPRIVATION OF FEDERAL CIVIL RIGHTS UNDER 42 U.S.C. § 1983

146.  Plaintiff DWAYNE LESLIE repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

147. All of the aforementioned acts of the Defendant THE CITY OF NEW YORK and the Defendant POLICE OFFICERS, their agents, servants and employees, were carried out under the color of state law.

148. All of the aforementioned acts deprived Plaintiff DWAYNE LESLIE of the rights, privileges and immunities guaranteed to citizens of the United States by the First, Fourth, Fifth, Eighth and Fourteenth Amendments to the Constitution of the United States of America, and in violation of 42 U.S.C. § 1983.

149. The acts complained of were carried out by the aforementioned individual defendants in their capacities as police detectives, lieutenants, and officers, with all of the actual and/or apparent authority attendant thereto.

150. The acts complained of were carried out by the aforementioned individual defendants in their capacities as police detectives, lieutenants, and officers, pursuant to the customs, usages, practices, procedures, and the rules of Defendant THE CITY OF NEW YORK and the New York City Police Department, all under the supervision of ranking officers of said department.

151. The Defendant POLICE OFFICERS and Defendant THE CITY OF NEW YORK, collectively and individually, while acting under color of state law, engaged in Constitutionally-violative conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the Constitution of the United States.

152. As a result of the above constitutionally impermissible conduct, Plaintiff DWAYNE LESLIE was caused to suffer personal injuries, violation of civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, loss of property, damage to property, legal expenses and damage to his reputation and standing within his community.

153. As a result of Defendants' impermissible conduct, Plaintiff DWAYNE LESLIE demands judgment against Defendants in a sum of money to be determined at trial.

## SECOND CLAIM FOR RELIEF
## FALSE ARREST UNDER 42 U.S.C. § 1983

154. Plaintiff DWAYNE LESLIE repeats, reiterates and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

155. As a result of the aforesaid conduct by Defendants, Plaintiff DWAYNE LESLIE was subjected to an illegal, improper and false arrest by the Defendant POLICE OFFICERS and taken into custody and caused to be falsely imprisoned, detained and confined without any probable cause, privilege or consent.

156. As a result of the above constitutionally impermissible conduct, Plaintiff DWAYNE LESLIE was caused to suffer personal injuries, violation of civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, loss of property, damage to property, legal expenses and damage to his reputation and standing within his community.

157. As a result of Defendants' impermissible conduct, Plaintiff DWAYNE LESLIE demands judgment against Defendants in a sum of money to be determined at trial.

### THIRD CLAIM FOR RELIEF
### <u>FAILURE TO INTERVENE UNDER 42 U.S.C. §1983</u>

158. Plaintiff DWAYNE LESLIE repeats, reiterates and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

159. The Defendant POLICE OFFICERS and Defendant THE CITY OF NEW YORK had an affirmative duty to intervene on Plaintiff DWAYNE LESLIE'S behalf to prevent the above-referred violations of Plaintiff DWAYNE LESLIE'S constitutional rights.

160. The individual Defendant POLICE OFFICERS failed to intervene on Plaintiff DWAYNE LESLIE'S behalf to prevent the violation of his constitutional rights despite having had realistic opportunities to do so.

161. The individual Defendant POLICE OFFICERS failed to intervene on Plaintiff DWAYNE LESLIE's behalf to prevent the violation of his constitutional rights despite having substantially contributed to the circumstances within which Plaintiff DWAYNE LESLIE's rights were violated by their affirmative conduct.

162. As a result of the aforementioned conduct of the individual defendants, Plaintiff DWAYNE LESLIE'S constitutional rights were violated.

163. As a result of the above constitutionally impermissible conduct, Plaintiff DWAYNE LESLIE was caused to suffer personal injuries, violation of civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, loss of property, damage to property, legal expenses and damage to his reputation and standing within his community.

164. As a result of Defendants' impermissible conduct, Plaintiff DWAYNE LESLIE demands judgment against Defendants in a sum of money to be determined at trial.

## FOURTH CLAIM FOR RELIEF
## <u>EXCESSIVE FORCE UNDER 42 U.S.C. § 1983</u>

165. Plaintiff DWAYNE LESLIE repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

166. The Defendant POLICE OFFICERS administered a brutal beating upon Plaintiff DWAYNE LESLIE in the absence of need for such action and force.

167. The Defendant POLICE OFFICERS threw, shoved, and subjected Plaintiff DWAYNE LESLIE to several physically aggressive maneuvers without Defendants identifying a requisite need for such action and force.

168. On orders of one or more senior Defendant POLICE OFFICERS, the Defendant POLICE OFFICERS kept Plaintiff DWAYNE LESLIE handcuffed to his hospital bed for several days, despite Plaintiff DWAYNE LESLIE's injuries rendering him substantially incapable of flight.

169. On orders of one or more senior Defendant POLICE OFFICERS, the Defendant POLICE OFFICERS kept Plaintiff DWAYNE LESLIE handcuffed to his hospital bed for several days, despite Plaintiff DWAYNE LESLIE's entirely cooperative and agreeable demeanor and behavior.

170. The level of force employed by the Defendant POLICE OFFICERS against Plaintiff DWAYNE LESLIE was objectively unreasonable.

171. The force employed by the Defendant POLICE OFFICERS against Plaintiff DWAYNE LESLIE did not advance any proper government objective.

172. As a result of the aforementioned conduct of Defendants, Plaintiff DWAYNE LESLIE was subjected to excessive force and sustained physical injuries.

173. As a result of the aforementioned conduct of the Defendant POLICE OFFICERS, Plaintiff DWAYNE LESLIE suffered and sustained injuries to his left ankle.

174. As a result of the aforementioned conduct of the Defendant POLICE OFFICERS, Plaintiff DWAYNE LESLIE suffered and sustained injuries to his face.

175. As a result of the aforementioned conduct of the Defendant POLICE OFFICERS, Plaintiff DWAYNE LESLIE suffered from double vision.

176. As a result of the aforementioned conduct of the Defendant POLICE OFFICERS, Plaintiff DWAYNE LESLIE suffered from blurry vision.

177. As a result of the aforementioned conduct of the Defendant POLICE OFFICERS, Plaintiff DWAYNE LESLIE suffered and sustained injuries to his teeth.

178. While in the hospital and still in the custody of the Defendant New York City Police Department, Plaintiff DWAYNE LESLIE was handcuffed to his hospital bed.

179. While in the hospital and still in the custody of the Defendant New York City Police Department and handcuffed to his hospital bed, Plaintiff DWAYNE LESLIE had recently received surgery on his left ankle.

180. While in the hospital and still in the custody of the Defendant New York City Police Department and handcuffed to his hospital bed, Plaintiff DWAYNE LESLIE had recently received surgery on his left ankle and was not a flight risk.

181. The Defendant New York City Police Department's act of handcuffing Plaintiff DWAYNE LESLIE to his hospital bed when he had recently received surgery on his left ankle and was not a flight risk constituted a use of unnecessary force.

182. The Defendant New York City Police Department's act of handcuffing Plaintiff DWAYNE LESLIE to his hospital bed when he had recently received surgery on his left ankle and was not a flight risk constituted a use of excessive force.

183. As a result of the above constitutionally impermissible conduct, Plaintiff DWAYNE LESLIE was caused to suffer personal injuries, violation of civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, loss of property, damage to property, legal expenses and damage to his reputation and standing within his community.

184. As a result of Defendants' impermissible conduct, Plaintiff DWAYNE LESLIE demands judgment against Defendants in a sum of money to be determined at trial.

### FIFTH CLAIM FOR RELIEF
### MUNICIPAL LIABILITY UNDER *MONELL*

185. Defendants used excessive force on Plaintiff DWAYNE LESLIE in the absence of any evidence of criminal wrongdoing or other justification for the use of such force, notwithstanding their knowledge that said uses of force were unreasonable, unjustified, and would jeopardize Plaintiff DWAYNE LESLIE's liberty, well-being, safety and constitutional rights.

186. Defendants arrested and incarcerated Plaintiff DWAYNE LESLIE in the absence of any evidence of criminal wrongdoing, notwithstanding their knowledge that said arrest and incarceration would jeopardize Plaintiff DWAYNE LESLIE'S liberty, well-being, safety and constitutional rights.

187. The acts complained of were carried out by the aforementioned individual Defendant POLICE OFFICERS in their capacities as police detectives, lieutenants, and officers, with all the actual and/or apparent authority attendant thereto.

188. The acts complained of were carried out by the aforementioned individual defendants in their capacities as police detectives, lieutenants, and officers and officials pursuant to the customs, policies, usages, practices, procedures, and rules of Defendant THE CITY OF NEW YORK and the New York City Police Department, all under the supervision of ranking officers of said department.

189. The aforementioned customs, policies, usages, practices, procedures and rules of Defendant THE CITY OF NEW YORK and the New York City Police Department include, but are not limited to, the following unconstitutional practices:

    a. the continuing practice or custom of New York City Police Officers utilizing disproportionate force in a punitive, retaliatory or otherwise wrongful manner in interactions with civilians generally;

    b. the continuing practice or custom of New York City Police Officers utilizing disproportionate force in a punitive, retaliatory or otherwise wrongful manner in interactions with minorities;

    c. the continuing practice or custom of New York City Police Officers wrongfully arresting individuals without conducting investigations sufficient to ascertain whether there is probable cause to arrest said persons;

    d. the continuing practice or custom of New York City Police Officers wrongfully arresting minority individuals without conducting investigations sufficient to ascertain whether there is probable cause to arrest said persons;

    e. the continuing practice or custom of New York City Police Officers wrongfully supporting improper arrests of individuals through "testilying" and "flaking;"

    f. the continuing practice or custom of New York City Police Officers wrongfully supporting improper arrests of minority individuals through "testilying" and "flaking;"

    g. the continuing practice of failing to properly screen, supervise, discipline, transfer, counsel, or otherwise control police officers engaged in the excessive use of force or in warrantless or otherwise unconstitutional arrests or otherwise impermissible violations of individuals' constitutional rights, particularly with respect to officers who are repeatedly accused of such acts;

    h. the custom or practice of members of the New York City Police Department known as the "Blue Wall of Silence," wherein members of the New York City Police Department intentionally and willfully fail to cooperate with investigations into the misconduct or corrupt activities of their fellow officers, a practice which leads New York City Police Officers to regularly condone and cover up police abuse of power by telling false and incomplete stories.

190. As of the July 7, 1994 *Mollen Commission Report,* Defendant THE CITY OF NEW YORK had notice that the officers and commanders of the New York City Police Department tolerated and encouraged police to lie to cover up the wrongful conduct of themselves and their fellow officers, including brutal conduct like that which was perpetrated by the Defendant POLICE OFFICERS upon Plaintiff DWAYNE LESLIE.

191. Defendant THE CITY OF NEW YORK continued to have notice after 1994 that the officers and commanders of the New York City Police Department continued to tolerate and encourage police to lie to cover up the wrongful conduct of themselves and their fellow officers after the publication of the Mollen Commission Report.

192. Upon information and belief, the above-referred constitutionally violative policies, practices and customs remain widespread, open, and notorious throughout the New York City Police Department to date.

193. Upon information and belief, the policymakers of the New York City Police Department and Defendant THE CITY OF NEW YORK are aware that these practices and customs of the New York City Police Department continue to date, and have failed to take adequate steps to curb these practices and customs, which regularly cause the violation of citizens' Constitutional rights.

194. Defendant THE CITY OF NEW YORK has failed to meaningfully curb these Constitutionally-violative customs and practices to date.

195. Upon information and belief, Defendant THE CITY OF NEW YORK, and the New York City Police Department failed to effectively screen, train, supervise and discipline its police officers, including, but not limited to the Defendant POLICE OFFICERS, as demonstrated by their propensity for group violence, including excessive use of force and restraint, and for their failure to protect citizens from unconstitutional conduct of other police officers.

196. Upon information and belief, Defendant THE CITY OF NEW YORK, failed to put into place and otherwise maintained an inadequate structure for risk containment and stress management relative to its police officers. Inter alia, the structure was deficient at the time of pre-selection and selection to evaluation and exchange within the command structure about the performance of individual police officers; to the training of supervisory personnel to effectively and adequately evaluate performance of an officer; and to otherwise put the command structure on notice that an individual was at significant levels of risk to the public at large or to specific segments thereof.

197. The net effect of these deficiencies and failures was to permit police officers of the New York City Police Department to function at levels of significant and substantial risk to the public.

198. The foregoing customs, policies, usages, practices, procedures, and rules of Defendant THE CITY OF NEW YORK and the New York City Police Department evince deliberate indifference to the safety, well-being, and constitutional rights of Plaintiff DWAYNE LESLIE.

199. As a result of the above constitutionally impermissible conduct, Plaintiff DWAYNE LESLIE was caused to suffer personal injuries, violation of civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, loss of property, damage to property, legal expenses and damage to his reputation and standing within his community.

200. As a result of Defendants' impermissible conduct, Plaintiff DWAYNE LESLIE demands judgment against Defendants in a sum of money to be determined at trial.

## SIXTH CLAIM FOR RELIEF
## EQUAL PROTECTION UNDER 42 U.S.C. § 1983

201. Plaintiff DWAYNE LESLIE repeats, reiterates and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

202. At all times described herein, Plaintiff DWAYNE LESLIE was possessed of the right to equal protection under the laws, as guaranteed under the 14th Amendment to the United States Constitution.

203. The Defendant POLICE OFFICERS arrested and incarcerated Plaintiff DWAYNE LESLIE in the absence of any evidence of criminal wrongdoing, notwithstanding their knowledge that said arrest and incarceration would jeopardize Plaintiff DWAYNE LESLIE's liberty, well-being, safety and constitutional rights.

204. The acts complained of were carried out by the aforementioned individual Defendant POLICE OFFICERS in their capacities as police officers and officials, with all the actual and/or apparent authority attendant thereto.

205. The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers and officials pursuant to the customs, policies, usages, practices, procedures, and rules of Defendant THE CITY OF NEW YORK and the New York City Police Department, all under the supervision of ranking officers of said department.

206. Plaintiff DWAYNE LESLIE was falsely accused of crimes and violations and was taken into Police custody and detained against his will.

207. That following his arrest, Plaintiff DWAYNE LESLIE was charged with crimes and violations.

208. That the above described charges were a pretext intended to justify Plaintiff DWAYNE LESLIE'S illegal arrests.

209. That the actions of the Defendant POLICE OFFICERS heretofore described, constituted unlawful detention, imprisonment, assault and battery and malicious prosecution and were designed to and did cause specific bodily harm, pain and suffering both in violation of Plaintiff DWAYNE LESLIE'S Constitutional rights as guaranteed under 42 U.S.C. §1983 and the United States Constitution, Fourth and Fourteenth Amendments and the Constitution of the State of New York and in direct retaliation for Plaintiff DWAYNE LESLIE'S exercise of his civil and constitutional rights of free, free expressive association as guaranteed by the Fourteenth Amendments to the United States Constitution as well as the Constitution of the State of New York.

210. The particular arrest of Plaintiff DWAYNE LESLIE is believed to have been motivated in whole or in part by a custom or practice of racism of victimization, not of hate, whereby minority individuals are charged with crimes and violations such as resisting arrest, disorderly conduct, and obstruction of governmental administration, in the absence of probable cause to arrest, due to a perceived ease of prosecution of such minority individuals.

211. The particular arrest of Plaintiff DWAYNE LESLIE is believed to have been motivated in whole or in part by a custom or practice of racism of victimization, not of hate, whereby minority individuals are charged with crimes and violations such as resisting arrest, disorderly conduct, and obstruction of governmental administration, in the absence of probable cause to arrest, due to a perceived ease of prosecution of such minority individuals, because the Defendant POLICE OFFICERS informed Plaintiff DWAYNE LESLIE that he was being arrested after it was already established that Plaintiff DWAYNE LESLIE was not carrying any weapons or illegal substances, and did not have any outstanding warrants against him,

212. The Defendant POLICE OFFICERS, through their actions, carried out a discriminatory application of such laws, driven by a discriminatory motivation of what might otherwise be facially neutral statutes due to a perceived ease of prosecution.

213. As a result of the aforementioned conduct, the Defendant POLICE OFFICERS have violated Plaintiff DWAYNE LESLIE'S constitutional rights to equal protection, and Plaintiff DWAYNE LESLIE is entitled to seek redress under 42 U.S.C. §1983, and is further entitled to injunctive relief to the extent necessary to prevent further disparate treatment and retaliation.

214. The foregoing customs, policies, usages, practices, procedures, and rules of Defendant THE CITY OF NEW YORK and the New York City Police Department were the direct and proximate cause of the constitutional violations suffered by Plaintiff DWAYNE LESLIE as alleged herein.

215. The foregoing customs, policies, usages, practices, procedures, and rules of Defendant THE CITY OF NEW YORK and the New York City Police Department were the moving force behind the constitutional violations suffered by Plaintiff DWAYNE LESLIE as alleged herein.

216. As a result of the foregoing customs, policies, usages, practices, procedures and rules of Defendant THE CITY OF NEW YORK and the New York City Police Department, Plaintiff DWAYNE LESLIE was subjected to excessive force, false arrest, and excessive and unnecessary detention.

217. As a result of the foregoing, Plaintiff DWAYNE LESLIE was caused to suffer personal injuries, violations of his civil rights, negligent and intentional infliction of emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, loss of wages, legal expenses, and damage to his reputation and standing within his community.

218. As a result of the foregoing, Plaintiff DWAYNE LESLIE demands judgment against Defendants in a sum of money to be determined at trial.

WHEREFORE and in light of the foregoing, it is respectfully requested that the Court assume jurisdiction and:

[a] Invoke pendent party and pendent claim jurisdiction.

[b] Award appropriate compensatory and punitive damages.

[c] Award appropriate declaratory and injunctive relief.

[d] Empanel a jury.

[e] Award attorney's fees and costs.

[f] Award such other and further relief as the Court deems to be in the interest of justice.

DATED:     New York, New York
           February 4, 2013

                                    Respectfully submitted,


                        _____
                                  ~//s//~
                        SAMUEL B. COHEN [SC 0622]
                        STECKLOW COHEN & THOMPSON
                        10 SPRING STREET – SUITE 1
                        New York, New York 10012
                        [212] 566-8000
                        [212] 202-4952/FAX
                        ATTORNEYS FOR PLAINTIFF